I think this case qualifies in some ways like the last one, as you can't really dream up facts like this. But here they are. Thank you, Your Honor. I'm Randy Bishop from Billings, Montana, representing Plaintiff and Appellant Robert Harris. I quite agree. I was listening to the Court's remarks, thinking, by the way, that I'd like to reserve three minutes for rebuttal, and wondering how it is that I end up with the Chinese curse, may you live in interesting times. We've certainly been on a roller coaster ride since I stepped into this case to help out a young lawyer in Butte who felt she was getting stonewalled. If you're familiar with the facts, this is a case where the District Court in Montana, for reasons that I think took all parties by surprise, elected to resort to Louisiana to determine that a joinder of a co-defendant was a sham and fraudulent, and then using the perceived but, in fact, nonexistent fraudulent intent as a fulcrum, which he characterized as sharp practice tantamount to a fraud upon the Court, to simply sidestep the timeliness issue on the removal that was attempted some ten months after this complaint was filed. Just to be clear, no matter how you slice it, nobody thought that this dead person who may have been alive, in their view, was from Montana at that point, is that correct? Well, certainly nobody alleged it. Nobody knew one way or another. So the joinder was not an effort to defeat diversity? Absolutely not. The reference in the complaint was to the fact that Kenneth L. Brown, the resident agent 30 years prior when he sold his disability policy to Bob Harris. It was simply to set the stage about what his role was and to identify who the players were. There was no allegation of citizenship at that time, and certainly not at the time the complaint was filed. It is noteworthy that Banker's Life and its removal papers refer to residency as if residency has some federal jurisdictional impact, and of course it does not. It is true that due to the complete inability to find Kenneth Brown, he was never served. But again, service has no bearing upon federal jurisdiction either. What happened was the parties came up against expert witness deadlines and a trial setting some four months hence, and an urgent decision was made, was submitted by Banker's Life, and they removed this case using as their justification for an untimely removal the argument that in saying, plaintiffs saying, we do want to go to trial, that in February of 2004, that that somehow worked as severance of this co-defendant. And in fact, the argument was fabricated from whole cloth because the co-defendant was never asserted to be a Montana citizen. You know what, it bothers me a little bit, although it may not be strictly relevant on the issue of the removal, but it bothers me to think of someone being sued without an adequate investigation to know they're not alive. Like, I think I did litigation for a lot of decades, for a few decades, and I can't recall a case of someone suing someone who had been dead for 20 years. It bothers me, too. So I wonder about that, and I wonder if that had an effect on the trial court here, on the district courts thinking that something, you know, had gone on that was not proper practice. I think it's very clear the district court reached that conclusion, and frankly, it bothers me, too. But what one needs to do in order to understand what Ms. Sterin was thinking is put herself in the position of being a young lawyer being approached by a man who paid premiums for 30 years, who's totally disabled. He's an iron worker on oxygen. He's totally disabled due to a massive heart attack. He's receiving Social Security disability benefits, but he's being denied benefits by this company, and he needs the money to live on. She drafted a complaint to try to get some action from Banker's Life, and she filed it. She didn't succeed in getting action from Banker's Life, unfortunately. Right. But she drafted a complaint and named a party that she didn't have any contact with or investigation to determine if they're alive, right? Incorrectly. With all due respect, she, although we were never given the opportunity to supplement the record, we requested leave to file once this sham and fraudulent issue came up in the order, but we were never permitted to supplement the record. Judge Haddon said no. And, in fact, she made considerable investigatory efforts by contacting, well, it's not in the record, so I can't go there. You'd better not get into anything that's not in the record. But all I'm saying is it strikes me that is a signal fact here, the suing of someone who's not alive. What was the residence alleged for Brown? The complaint alleged that he was a resident Montana agent in 1972. Earlier. So there's no allegation as to his current diversity status. None whatsoever. Which wouldn't be necessary in state court. It's absolutely unnecessary. There's no reason in state court to allege the current residency of someone, I assume. Is that right? Pardon me? There's no reason in your state court to allege a current residency of a defendant. None whatsoever. Or at least it's not required. It might be done, but it doesn't have to be done. Some do. Most don't. So she would have, and even if he were deceased, could she potentially have a cause of action against him that would be covered by his insurance? Absolutely. If there were not a claims made policy, but a coverage policy in terms of date. Absolutely. And Montana's survival statute, which, of course, the district court completely omitted reference to, makes it very clear, Montana case law makes it very clear that you don't fail to state a claim. You're not susceptible to a Rule 12b-6 motion simply because the party that you've sued happens to be deceased. But it's hard for me to imagine you can make a claim against someone 20 years after they're gone. I mean, their estate can be called into court for a year or so in our state, you know, in Washington, I think. And I think most states have a limited period where an estate can answer for something. Well, Montana does not, Your Honor. And while it is certainly far from a desirable situation, I think no plaintiff's attorney wants things to work out this way. The fact of the matter is that legally in the Ninth Circuit it's crystal clear that for a fraudulent joinder to be present, what you have to show is a failure to state a claim which is obvious in accordance with settled principles. And while there may be arguments that they could come in and make in response to that, it certainly cannot be said that according to settled Montana law it's obvious that this does not state a claim. Did you want to reserve time for rebuttal? I do, Your Honor.  Thank you. My name is John Gordon. I'm from Missoula, Montana, and I'm representing Banker's Life in this matter, Your Honors. I don't have much disagreement with the characterization that my worthy opponent has made of the facts in this case, except there are some qualifications. First of all, I think part of the problem here is that Judge Haddon came out so strongly on this issue of having named someone who was deceased. The fact of the matter is if you look at his order, he made his decision on the basis that the claim against Mr. Brown had been abandoned. Yes, and this was an alternate basis. Right. And the application, as I see it here, and it's been a difficult one trying to figure out how we sort out 1446 in relationship to this, is that when the complaint is filed in the state court, granted the jurisdictional allegation for diversity doesn't have to be there, at some point that issue gets resolved. 1446 says that you look at the complaint, and if on its face it doesn't appear or it appears that diversity exists, then you make you must make your motion or your used to be a petition on this. Yes, the question. Pardon? Here the complaint on its face seems to be indeterminate because it doesn't allege a current residency of the prior broker. Correct. And in that situation, why wouldn't the statute just put the burden on the defendant if the defendant wants to remove the case to investigate citizenship and come to a conclusion and make a removal if appropriate? Within the 30 days. The problem is how do you do that and meet the requirement of Rule 11, where I have a disagreement with Judge King and Kenneth Sherrill, which seems to be the primary issue here, and that is you have 30 days, but you have no way to serve any discovery on the plaintiff to find out what they know about it. But in this case, it was in your files. It was, but we haven't had anything to do with this man for 30 years. And we don't move that fast to even find out whether he was alive or dead at that point in time, if that makes sense. Kind of logically, though, you know, if a defendant sued, you'd say, hey, this is a claim. And it really grew out of what this guy Joe did 30 years ago. Let's find out where Joe is and see what went on. And somebody would kind of start looking into it. He said, my God, Joe's dead. Absolutely. And you'd know about it. And then you'd have, you know, you could do your removal if you wanted to. But I don't think 1446 is designed to operate that way. And that's the point that I'm trying to make here. 1446 assumes that if the complaint contains enough information that you can make a diversity determination, then you do that. If it's indeterminate. If it's indeterminate, and this is where I disagree with Judge King and Kenneth Sherrill, what you have to do is you have to come up with some basis to say under Rule 11 that there is a diversity here and we need to remove. You can't do that within 30 days. You can't submit an admission or request for admission or even serve discovery and get a response within the 30-day period. See, here's the difficulty we have is that you could, not you, but your client, it was within your client's ability to make this determination. But the rule you're arguing for is a broader rule, which makes some sense, because not everybody has it in their client's files, the answer to this big question. So we're kind of torn here between what might be a general rule that you propose, and you'd like to come under the benefit of that rule, and the specific circumstances where your client actually could have found out within 30 days. So how, in your view, should the court reconcile that conundrum? Okay. My suggestion is you look at the language of 1446. And it seems to me that the statute sort of sets that out. And it says if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by defendant through service or otherwise of a copy of an amended pleading. I don't mean to interrupt you, but the first clause you read, that if it appears it's not removable? Right. It doesn't seem like that's satisfied here, literally, because it doesn't really appear from the state claim that it's not removable. It may be indeterminate. In other words, it may not appear it's definitely removable, but it doesn't on its face show it's not removable. Well, it does to the extent that there's no indication of what Mr. Brown's citizenship is. There's nothing in the complaint that defines that. So if the complaint on its face indicates it's not definitely removable, I'm reading it. Then the statute contemplates that you have to be, that the defendant has to be served with something that then kicks in the time to file your removal. That's the way I think you're interpreting it. But the best way to read this, although we don't know because the allegation would be the best they knew, this person was a Montana agent of the insurance company in the past. So. That's inferred in the pleading. Right. So how does that fit into this 1446B? 1446B, what I'm saying is, is that the pleading doesn't show that it is removable. So that makes it show it not being removable. And my point is that in order to make this operate, it seems to me you have to have some definable method of determining when the 30 days goes if the complaint doesn't specifically show that. And that had to have been the thought process when they were adopting the removal statute. We've changed it so that the fictitious defendants don't come out. In this case, the defendant. Do you have, is there any case that you've found that's close to your situation? Well, no, except that in, is it Jong? I don't have a citation. Page 226 in Jong. Okay. The comment is made in that case that a service of a paper gives the defendant the right to remove even if it had actual knowledge of the diversity before the service of the paper. The difference is, and I think Kenesha, Kenesharo, in that case, it was pretty clear from the allegations of the complaint, even though the word citizenship wasn't used, that the guy was a resident of Hawaii, apparently had been there for a long period of time. In this case, where it's indeterminate, you don't know where this fellow was. He sold a policy to somebody in Montana, but nobody knew where he was. To impose on a defendant the requirement that you kick out your removal petition without any basis jeopardizes you under Rule 11, it seems to me. To make it reasonably practical, the statute has been designed to say that the defendant has to be served with something that puts him on notice that it is removable. In this case, that occurred, as Judge Haddon found, when the defendant or the plaintiff elected not to proceed against this defendant, which clearly then made it a diversity case. All right. It's confusing. I concur with you. There are decisions all over the map, and they look like they're fact-specific. Right. Okay. Thank you. Nobody is ultimately out of court here, is that right, no matter which way it goes? What's that? Nobody is ultimately out of court. In other words, you're either in state court or federal court. No, I'm out of federal court. We dismissed our case with prejudice to get an appealable order, Your Honor. I'm done. If this is not remanded to state court. Well, I'm saying, but you're either in federal court or state court. You're in some court. No. My case is over. Oh, it's over. Yep. We did not want to be in federal court. That was not our choice of venue. And we filed in order to. What's wrong with federal court? Pardon me? What's wrong with federal court? Your Honor, we. You don't have to answer that question. It sounded like a trick question. I walked into it. Take the tip. Thank you very briefly with the time available. The defendant is arguing for a rule which would require every state court attorney filing a case to draft that complaint as an anti-federal court complaint. That's the rule he's arguing for. And with all due respect, it reminds me again of the case just argued. It's one of the things that drives people in Montana crazy when you think about the heavy hand of the federal government. That's not the way the system is supposed to work. The second paragraph of 1446B makes very clear that when the case stated is not removable. Well, this case, as it turns out, was always removable. Yes. And the rule of Ken Oshiro, Judge King outlined, makes perfect sense.  He says is the defendant entitled to sit on his rights to remove until such time as he deems it provident to discover from plaintiff the requisite jurisdictional facts and remove the case to federal court? Judge King answered that question no, and his reason is because if the defendant discovers the case is removable on the facts underlying the complaint, he has been afforded an egregious opportunity to delay and squander both judicial resources and the resources of the adversary. We went through a scheduling conference. We went through discovery requests, which they objected to, where we asked for the identity and location of the selling agent. We had a trial setting. We had expert witnesses lined up. Discovery was closed. How long was it pending in the State court before the removal? Pardon me? How long was the case in the State court? Ten months. Before removal. Okay. And you were on the verge of trial? We had a trial setting in February of 2004. We had our scheduling conference in June of 2003. Our expert disclosure was in October of 2003. A State court set aside time and resources, and the parties prepared their case. And then they didn't like the schedule. They wanted it changed. We said we want our trial date, and they popped us into federal court. And Judge King's ruling recognizes that's unfair. I'm out of time, Your Honor. Thank you. Thank you both for your arguments. Very interesting and totally unusual case. The case of Harris v. Banker's Life is submitted and we're adjourned. Just before we adjourn, I wanted to comment that my experience on this court has been that the counsel from Montana are always well prepared. They're good lawyers, and they have a wonderful relationship, professional relationship with one another. So I just wanted to compliment both of you on that relationship that you've brought to this court. Thank you. You've done a good job. We appreciate it. Thank you. Mr. Gordon, I'll go back to smiling no matter what. Well, we hope you'll like federal court in the future. Yes. We want to change your mind about federal court. We're not on a PR campaign, but. Thank you. Thank you. All rise. This court for this session stands adjourned.
judges: Thompson, McKeown, Gould